1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENNETT HASELTON,

Plaintiff,

v.

CITY OF SEATTLE, et al.,

Defendants.

No.  2:23-cv-0706-BJR

**ORDER DENYING MOTION FOR
RECONSIDERATION**

## I.      INTRODUCTION

This matter comes before the Court on Plaintiff Bennet Haselton's Motion for
Reconsideration of the Court's Order (1) Denying Plaintiff's Motion for Partial Summary
Judgment and (2) Granting Defendants' Motion for Summary Judgment. Dkt. No. 45 ("Summary
Judgment Order"), dismissing Plaintiff's Complaint. Plaintiff seeks reconsideration only of the
Court's denial of his request under Federal Rule 56(d) to stay or deny Defendants' Motion for
Summary Judgment, to allow him to take discovery that he claims is essential to his opposition to
that motion. Having considered the parties' briefs in support of and in opposition to the Motion
for Reconsideration, the Court concludes it did not commit manifest error in denying Plaintiff's
Federal Rule 56(d) request, as the additional discovery that Plaintiff seeks, even if it exists, would
not alter outcome of this case, for the reasons set forth below.

ORDER - 1

## II.    BACKGROUND

Plaintiff's claims stem from incidents surrounding his arrest, which he asserts was effected by the Seattle Police Department ("SPD") Defendants in violation of his First and Fourth Amendment rights under the U.S. Constitution. As set forth in more detail in the Summary Judgment Order, on Saturday, August 1, 2020, a group of activists held a planned rally at Seattle City Hall Plaza called "Defend Not Defund SPD" to voice support for the Seattle Police Department and opposition to the "Defund the Police" movement. Summary Judgment Order at 4-6. The rally was held during a summer of widespread, large-scale protests in the wake of the murder of George Floyd by Minneapolis police officers. As the Court's Summary Judgment Order acknowledges, while most of these protests in Seattle were peaceful, several sparked violence that resulted in both serious casualties and extensive property damage. *See id.*, 2-3.

It was in this context that the Seattle Police Department adopted an "Incident Action Plan" ("IAP") related to the Defend Not Defund rally. Ex. 1 to Decl. of Dallas LePierre, Dkt. No. 29. Pursuant to the IAP, the SPD erected temporary crowd-control barriers around City Hall Plaza, intending to keep the Defend protestors, and the anticipated counter-protestors, separate. Plaintiff, a self-described counter-protestor, succeeded in breaching the barriers and entering the Defend rally. After attempting to confront one Defend protestor in particular and causing a disturbance, Plaintiff was given the option of leaving the plaza to continue his protest on the sidewalk adjacent to the rally, or be arrested. He chose the latter.

Within weeks of the filing of this lawsuit, the parties cross-moved for summary judgment. The Court granted Defendants' motion and dismissed Plaintiff's First and Fourth Amendment claims against both the City of Seattle and the individual SPD Defendants. The Court held that the IAP was a content-neutral time, place, and manner restriction, which was narrowly tailored to meet

ORDER - 2

the significant government interest of maintaining public safety, while leaving open adequate alternative channels of communication. It further held that given the constitutionality of the restriction, Plaintiff's arrest was supported by probable cause. The Court also denied Plaintiff's Motion for Summary Judgment, and denied Plaintiff's Federal Rule 56(d) request to stay a ruling to allow for the taking of discovery. Plaintiff timely filed this Motion for Reconsideration.

## III.   DISCUSSION

Plaintiff seeks reconsideration of this Court's denial of his request that Defendant's Motion for Summary Judgment be denied or continued under Federal Rule 56(d), pending the taking of discovery that he claims is essential to his case. Federal Rule 56(d) provides, in relevant part, that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it;" and "(2) allow time to obtain affidavits or declarations or to take discovery." A party requesting 56(d) relief "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,* 525 F.3d 822, 827 (9th Cir. 2008).

In his opposition to Defendants' Summary Judgment Motion, Plaintiff requested an opportunity to seek information pertaining to the Defendants' "true motive" in adopting the IAP and imposing the time, place, and manner restriction on the Defend not Defund protestors and counter-protestors at City Hall on August 1.[1] The Court denied Plaintiff's FRCP 56(d) request,

---

[1] The facts Plaintiff sought included, more specifically, "the identity of the author of the document Defendants' [*sic*] filed as Dkt. No. 29-1 ("Incident Action Plan"); the circumstances and reasons for the document's creation; the veracity of the Plan's reference to violence, including whether there had been a history of violence among protest groups (as opposed to between police and protest groups); any other facts (or lack thereof) relied upon by the City in claiming a security risk justifying its viewpoint discrimination; the factual basis for the need to keep Plaintiff out of the plaza, arrest him, book him into jail, and keep all opposing viewpoints out of City Hall plaza; directives or orders

ORDER - 3

"[b]ecause the content-neutrality inquiry asks whether a government regulation was 'content neutral on its face,' which it plainly was here, and explicitly does not involve 'a searching inquiry of hidden motive.'" Summary Judgment Order at 9, n. 5 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1128- 29 (2005)). Plaintiff seeks reconsideration of this ruling, arguing that Defendants' "true motive" (1) is relevant in assessing the constitutionality of a content-neutral restriction; and (2) is relevant to the threshold question of whether the restriction is content neutral or content based.

The Court denies Plaintiffs' motion for reconsideration, concluding it was not manifest error to deny the 56(d) request, for the reasons set forth in its Summary Judgment Order. The Ninth Circuit in *Menotti* expressly held that "[i]n assessing whether a restraint on speech is content neutral, we do not make a searching inquiry of hidden motive; rather, we look at the literal command of the restraint. Stated another way, . . . 'whether a statute is content neutral or content based is something that can be determined on the face of it.'" 409 F.3d at 1129 (cited in Summary Judgment Order at 9). As this Court found, "the intent of the IAP, stated on its face and by the SPD officers, was to keep the two opposing groups separate to avoid an escalation of a conflict into violence." Summary Judgment Order at 12. The IAP did not preference one group over another or make reference to content; under *Menotti*, no further "searching inquiry" into the government's motive, therefore, was necessary. Because the restrictions were content neutral, they were subject to intermediate scrutiny, which the Court concluded they survived.

Plaintiff fails to explain how *Menotti* does not govern the outcome here, except to argue, in a footnote and without citation to any authority, that *Menotti* was superseded by *Reed v. Town*

---

regarding city policy given to the defendant officers on or around the day of the incident; the facts known to or suspected by the individual officer Defendants at the time they seized Plaintiff; and the meaning or interpretation of statements made by the Defendant officers on video and in the arrest report." Decl. of Nathaniel Flack, ¶ 4, Dkt. 36.

*of Gilbert*, 576 U.S. 155, 167 (2015). However, *Reed* involved a materially distinct set of facts (a town's regulation of different categories of signs, based on their content) and, as Defendants point out, held that a plaintiff does not need to prove illicit intent to challenge a facially content-based regulation—at best, an imprecise inverse of the question presented in *Menotti* and here. Indeed, *Reed* makes no reference to *Menotti*, which (like the instant case) involved a content-neutral, not a content-based, restriction.

The Court denies Plaintiff's request for reconsideration for an additional reason; Plaintiff has failed to demonstrate that even if he were to discover evidence of Defendants' purported "true motive," and even if that motive had the effect of rendering the subject restrictions content based, the outcome of this case would be any different. A content-based restriction is not necessarily unconstitutional; it simply requires a different—and higher—level of scrutiny. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) ("Reasonable time, place, and manner restrictions are allowed, but any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest.") (citation omitted).

The government action at issue here would survive this strict standard of review as well. There can be no dispute that "[p]ublic safety and crime prevention are compelling government interests for purposes of strict scrutiny analysis." *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 546 (D. Md. 2021) (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987) (noting that "the Government's general interest in preventing crime is compelling"); *Kolbe v. Hogan*, 849 F.3d 114, 139 (4th Cir. 2017) (en banc) (noting that a state's interest in "the protection of its citizenry and the public safety is not only substantial, but compelling")). In its Summary Judgment Order, the Court took "judicial notice of the fact of widespread protests in Seattle in the summer of 2020,

ORDER - 5

several of which gave rise to rioting resulting in property damage and casualties," and concluded that "[t]here is a more-than-sufficient 'basis in the record' here showing a threat of potential violence, and the consequences of SPD failing to anticipate violence and take adequate crowd-control measures before a peaceful demonstration becomes a riot." Summary Judgment Order at 16-17.[2] By maintaining order that day, the IAP served another compelling interest: ensuring the right of both "Defend" and "Defund" protestors to continue to express their respective views without violent interruption.[3]

Further, as the Court has already determined, the restrictions being challenged in this case were narrowly tailored to serve these interests. Summary Judgment Order at 13-14 (The "timing of the restrictions, the Court finds, was as narrow as reasonably possible under the circumstances to achieve the goal of mitigating the risk of violence," as were the restrictions' place and manner.). In other words, even if Plaintiff discovered the evidence he seeks, the standard of review applied in this case might change, but the outcome would not.

In seeking discovery under Federal Rule 56(d), Plaintiff cites *Jacobson v. United States Department of Homeland Security*, but that case does not support his request. 882 F.3d 878 (9th Cir. 2018). In *Jacobson*, the Ninth Circuit reversed a denial of Federal Rule 56(d) relief because

---

[2] Plaintiff continues to take issue with the purported lack of evidence of protestor vs. counter-protestor violence, while tacitly acknowledging the demonstrated history of violence between protestors and SPD officers that summer. It is not clear why Plaintiff believes this distinction should make a difference, as under either scenario, violence would pose a threat to public safety and order. Furthermore, as the Court expressly noted in the Summary Judgment Order, "there is ample evidence that during the Defend rally specifically, tempers on both sides of the crowd-control fencing were running high, even menacing" and the scene "could easily have turned physical." Summary Judgment Order at 17.

[3] The right of all protestors and counter-protestors to continue expressing their views in the absence of a disturbance outweighs Plaintiff's complaint that he was not allowed to do so in the exact location and manner of his choosing, a privilege the First Amendment does not guarantee. *See Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.").

ORDER - 6

genuine issues of material fact remained that precluded summary judgment. *Id*. at 883 (referencing a "fact-intensive, three-factor test to determine whether a location is a public forum in the first instance."). Plaintiffs in that case "sought discovery about who has been allowed into the enforcement zone and why," and "[w]hether the enforcement zone is a public or a nonpublic forum." These issues—and other issues of material fact—have already been resolved in this case. *See* Summary Judgment Order at 4 ("'Defund the Police' counter-protestors had gathered outside the fencing, while Defend protestors carried on within the fencing"; and City Hall Plaza "is undisputedly a public forum."). That additional discovery under Federal Rule 5(d) was "essential" to justify the nonmoving party's opposition in *Jacobson* says nothing about Plaintiff's entitlement *vel non* to discovery in this one.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration is DENIED.

Dated:  February 7, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 7